UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ZION HUNTER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 22-10549-FDS |
| EDDY CHRISPIN, et al., | ) |
| Defendants. | ) |

ORDER ON CITY OF BOSTON'S MOTION FOR A PROTECTIVE ORDER[1]
[Docket No. 49]

November 21, 2023

Boal, M.J.

The City of Boston and defendant Eddy Chrispin have moved for a protective order precluding plaintiff Zion Hunter from deposing the City of Boston about certain topics. Docket No. 49.[2] For the following reasons, this Court grants in part and denies in part the motion.

I.  RELEVANT BACKGROUND

In this action, Hunter alleges that on May 30, 2020, defendant police officers Eddy Chrispin and Brian Berry intentionally caused a collision between a state police cruiser and him,

---

[1] Chief Judge Saylor referred the motion to the undersigned on October 27, 2023. Docket No. 53.

[2] It was unclear whether the motion sought an order precluding the deposition altogether or questioning on certain topics. Compare Docket No. 50 at 1-2 (mentioning Topics 4 and 8) with id. at 10 (requesting that the Court "enter a protective order precluding Plaintiff from taking a 30(b)(6) deposition of the City of Boston Police Department."). At oral argument, counsel for the City clarified that it is only seeking an order precluding Hunter from questioning the City about Topics 4 and 8 without prejudice to moving for additional relief in the future.

1

when Hunter was riding a moped in Franklin Park in Boston.  Complaint at ¶ 6.  According to Hunter, police were dispatched to Franklin Park following a false and racially motivated 911 call in which a white adult male alleged that a black male was threatening him with a gun.  Id. at ¶ 7.  Hunter, a 19-year old black male, was not involved in that incident and did not match the description of the alleged perpetrator.  Id. at ¶¶ 12-13.  Nevertheless, Chrispin and Kelley pursued Hunter and deliberately drove their cruisers in front of him.  Id. at ¶ 14.  Hunter was injured in the resulting collision.  Id. at ¶ 15.

A security pole camera was located overlooking the collision site.  Docket No. 51 at 3; see also Complaint at ¶ 18.  On June 5, 2020, Hunter served a Freedom of Information Act ("FOIA") demand to the Office of the Legal Advisor, Boston Police Department for, inter alia, the pole camera footage.  Docket No. 51-5.  The City of Boston initially responded that the pole camera was privately owned.  Docket No. 51 at 3; Docket No. 51-5 at 5.  After the 30-day period for the automatic destruction of the footage expired, the City of Boston informed Hunter's counsel that the security camera in fact belonged to the City.  Docket No. 51 at 3; Docket No. 51-5 at 4; see also Docket No. 51-7.[3]  Hunter alleges that the defendants also failed to preserve other evidence of the incident, including Chrispin's notepad and the names of witnesses who gave statements unfavorable to the police.  Docket No. 51 at 4.

Hunter filed suit, asserting claims of assault and battery and excessive force against the two police officers and a negligence claim against the City of Boston.  Complaint at ¶¶ 30-32.

---

[3] It appears that Chrispin and the City have been evasive about the ownership of the camera.  See Docket No. 50 at 6 ("Just because Plaintiff cannot now piece together who own the camera does not give him a right to annoy or harass the City of Boston on this issue."); Docket No. 51 at 5 (noting that Chrispin has refused to stipulate that the camera is City owned and controlled).  At the November 20, 2023 hearing, counsel for the City stipulated that the City in fact owns the camera.

36-49. Judge Saylor subsequently dismissed the claim against the City of Boston. Docket No. 41.[4]

On August 11, 2023, Hunter's counsel served a notice for the Rule 30(b)(6) deposition of the City of Boston. As relevant to this motion, Hunter seeks testimony from a representative of the City of Boston on the following two topics:

> 4. A description of the location, kind and manner of operation, and the inspection, investigation of and preservation, or lack thereof, of all potential security camera footage of the May 30, 2020 incident, including all cameras and camera footage which were under the ownership, supervision or control of the City of Boston and/or the Boston Police Department, of any other governmental agency and/or of any private party, and description of all policies, practices and procedures in effect on May 30, 2020 and expected of police personnel relative to the inspection and preservation of potential real time video footage of an incident such as the subject incident.
>
> 8. Statistical and quantitative information, including but not limited to Field Interrogation and Observations (FIOs), detailing the racial breakdown of all persons pursued, stopped, searched, issued a citation and arrested A) by your police department at large, and B) by your employee who is a defendant in this action from January 1, 2010 to May 30, 2020, including but not limited to all data collected pursuant to MGL C. 90, Section 63; St. 2019, C. 122 Section 10 and St. 2000, C. 228.

Docket No. 50-1 at 4-5.[5]

II.  ANALYSIS

   A.  Standard Of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case depends on, among other things, "the

---

[4] Hunter had also brought a claim of negligence against the Commonwealth of Massachusetts. Complaint at ¶¶ 33-35. That claim was remanded to state court. Docket No. 23.

[5] The notice also seeks all documents regarding these topics.

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit." Id.

In general, "[a] party may, by oral questions, depose any person, including a party, without leave of court." Fed. R. Civ. P. 30(a). Rule 26(c) of the Federal Rules of Civil Procedure limits this generally broad access to witnesses during the discovery process. Fed. R. Civ. P. 26(c) (providing for the issuance of a protective order to avoid "undue burden" on the deponent). Specifically, Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed. R. Civ. P. 26(c)(1). Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co v. Rhinehart, 467 U.S. 20, 36 (1984).

B. Preliminary Matters

As a preliminary matter, this Court disposes of several of the City's arguments. First, the City suggests that its deposition is subject to the considerations that arise when a party attempts to depose high-ranking government officials. See Docket No. 50 at 4-5. However, Hunter is not seeking to depose any high-ranking government officials. Rather, he seeks to depose a representative of the City on certain topics. The City may designate any individual to testify on its behalf so long as they are prepared to testify on the topics set forth in the notice. See McIntyre v. BF Capital Holding, LLC, No. 3:14cv33, 2016 WL 5219445, at *1 (D. Conn. Sept. 20, 2016) ("[T]he noticed organization is empowered with the right—and obligation—to designate the person(s) to testify on its behalf."); Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano

4

Shoe Co., Inc., 201 F.R.D. 33, 36 (D. Mass. 2001) ("[T]he law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation.").

The City also suggests that it should not have to designate a Rule 30(b)(6) witness because it is no longer a party to this case. See Docket No. 50 at 5 ("First and foremost, the City is no longer a party to this case. Therefore, by permitting a 30(b)(6) deposition of the Boston Police Department can be considered annoyance and harassment."). Although status as a non-party is entitled to consideration in evaluating discovery requests, non-parties are not immune from discovery. See Continental Datalabel, Inc. v. Avery Dennison Corp., No. 10-mc-10176-RGS, 2010 WL 2473154, at *1 (D. Mass. June 15, 2010). Therefore, the fact that the City is a no longer a party in this case is insufficient, on its own, to warrant a protective order precluding its deposition.

In addition, the City argues that a Rule 30(b)(6) deposition is not the best method for obtaining the information sought by Topic 4. Docket No. 50 at 5-6. In so doing, the City cites to caselaw explaining that a Rule 30(b)(6) deposition is not the best method for discovering the facts supporting a party's contentions. See id. at 6 (citing Fidelity Mgmt. & Research Co. v. Actuate Corp., 275 F.R.D. 63, 64 (D. Mass. 2011)). Rather, contention interrogatories are a better vehicle. Actuate Corp., 275 F.R.D. at 64. Topic 4, however, does not concern a party's contention. Rather, it seeks simple facts regarding the pole security camera. Accordingly, Actuate Corp. has no applicability here.

Finally, the City argues that Topics 4 and 8 are unduly burdensome but has provided no specifics regarding the nature and extent of the actual burden it would face in preparing a witness to testify on these topics. See In re New England Compounding Pharmacy, Inc. Prods. Liab.

5

Litig., 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (citations omitted) ("The party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'").

        C.      Topic 4 Seeks Relevant Information, Is An Appropriate Topic, And Is Described With Reasonable Particularity

The City acknowledges that Topic 4 is relevant to issues regarding potential spoliation of video footage of the incident but argues that defendant Chrispin (as opposed to the City, which is no longer a party) cannot be subject to a spoliation inference because he did not control the camera and was not put on notice of a need to preserve any video. Docket No. 50 at 7-8. That, however, is the City's position on this issue. Hunter is entitled to probe that position as well as to discover facts such as who was in control of the camera, whether Chrispin was aware of the existence of the camera, and what happened to any video of the incident. Cf. Buren v. Crawford County, No. 13-cv-14565, 2017 WL 168156, at *11 (E.D. Mich. Jan. 17, 2017) ("Parties can be held liable for evidence spoliation even where they were not personally responsible for the loss of the evidence."). Topic 4 is sufficiently described with particularity and is relevant to this issue. Accordingly, Hunter may depose the City regarding Topic 4.

        D.      Topic 8 Is Not Relevant To Hunter's Claims

Topic 8 seeks testimony regarding statistical information detailing the racial breakdown of police stops and arrests by the City of Boston as well as defendant Chrispin for the period January 2, 2010 to May 30, 2020. Docket No. 50-1 at 5. Hunter argues that this information is

relevant to his claims of discriminatory policing.[6]  Hunter, however, has not brought an equal protection claim.  Rather, he has brought excessive force and assault and battery claims.  In order to prevail on his claims, Hunter will have to show that the defendant officers "employed force that was unreasonable under the circumstances."  Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (citations omitted).  The determination of reasonableness requires the fact finder to "balance the individual's interest against the government's, weighing three non-exclusive factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"  Id. (citations omitted).  Because excessive force claims are analyzed under an objective standard of reasonableness, the officer's subjective intent or motivation is irrelevant.  See id.  As such, Topic 8 seeks information irrelevant to Hunter's remaining claims.

III.  ORDER

For the foregoing reasons, this Court grants in part and denies in part the City's motion for a protective order.  Hunter may depose the City regarding Topic 4 but not regarding Topic 8.

       /s/ Jennifer C. Boal
JENNIFER C. BOAL
U.S. MAGISTRATE JUDGE

---

[6] The cases cited by Hunter in support of his position involve motions to suppress evidence.  See, e.g., Commonwealth v. Long, 485 Mass. 711, 713 (2020) (motion to suppress evidence based on claim that traffic stop violated principles of equal protection); Commonwealth v. Warren, 475 Mass. 530, 539 (2016) (motion to suppress evidence; noting that "where the suspect is a black male stopped by the police on the streets of Boston, the analysis of flight as a factor in the reasonable suspicion calculus cannot be divorced from the findings in a recent Boston Police Department [] report documenting a pattern of racial profiling of black males in the city of Boston"); Commonwealth v. Lora, 451 Mass. 425, 426 (2008) (holding that "evidence of racial profiling is relevant in determining whether a traffic stop is the product of selective enforcement violative of the equal protection guarantee of the Massachusetts Declaration of Rights; and that evidence seized in the course of a stop violative of equal protection should, ordinarily, be excluded at trial.").  As such, these cases are inapposite.